UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Case No. 08 CV 234 PAM/JJG

Edward M. Johnson,

           Plaintiff,

vs.

**COMPLAINT**

Joan Fabian, Erik Skon, David Corbo,
Jessica Symmes, David Reishus,
Michelle L. Smith, Regina Stepney,
Lt. Doug Johnson, Sgt. Todd Hartman,
Corrections Officer (CO) Dawn Willard,
CO Jeffrey L. Johnson, CO David Christensen,
CO Scott Gary, CO Shane Jones, John Doe (whose
true name is unknown) and Jane Roe (whose
true name is unknown),

DEMAND FOR JURY TRIAL

           Defendants.

Plaintiff Edward M. Johnson, for his Complaint against above-named Defendant, states and alleges as follows:

## I. INTRODUCTION

1.    This is an action for damages arising out of deliberate indifference to the safety of Plaintiff Edward M. Johnson by above-named Defendants, where their acts and omissions culminated in a brutal assault on Plaintiff Johnson on July 18, 2004 while he was incarcerated at Minnesota Correctional Facility - Stillwater. Defendants' refusal and failures to take clear and necessary measures to protect Mr. Johnson from a known threat from another inmate resulted in severe injuries, including specifically the

SCANNED
JAN 28 2008
U.S. DISTRICT COURT MPLS

permanent loss of his right eye. Mr. Johnson's causes of action are based on the Reconstruction Civil Rights Act of 1871, 42 U.S.C. § 1983.

## II. JURISDICTION AND THE PARTIES

2.  Plaintiff's causes of action include federal statutory civil rights claims pursuant to 42 U.S.C. § 1983, and thereby give rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331.

3.  Plaintiff Edward M. Johnson is a 31 year old male who is currently, and at relevant times hereto was incarcerated by the Minnesota Department of Corrections (DOC) at Minnesota Correctional Facility - Stillwater, Washington County, Minnesota..

4.  Defendant Joan Fabian is the commissioner of the DOC. She is ultimately responsible for the policies and practices in the prisons, and for acts and omissions regarding Mr. Johnson. Upon information and belief, she knew or should have known of problems with security breaches in segregation similar to those that occurred with Plaintiff, but failed to take necessary action.

5.  Defendant Erik Skon was at relevant times hereto, an assistant commissioner of the DOC responsible for administration of prisons. He has responsibility for policies and practices, and upon information and belief, for specific actions affecting Plaintiff Johnson. Upon information and belief, he knew or should have known of problems with security breaches in segregation similar to those that occurred

2

with Plaintiff, but failed to take necessary action.

6. Defendant David Corbo, at relevant times hereto, was the warden of MCF-Stillwater. He had responsibility for policies and practices as well as specific acts and omissions affecting Plaintiff Johnson.

7. Defendant Jessica Symmes, at relevant time hereto, was the associate warden of operations at MCF-Stillwater. He had responsibility for policies and practices as well as specific acts and omissions affecting Plaintiff Johnson.

8. Defendant David Reishus, is and at relevant times hereto, was program director at MCF-Stillwater. He oversaw the segregation unit and was responsible for acts and omissions affecting Plaintiff Johnson.

9. Defendant Michelle L. Smith, is currently a program director at MCF-Stillwater, and at relevant times hereto, was the lieutenant in charge of prison disciplinary prosecutions. She was repeatedly advised by Plaintiff Johnson of threats to his safety but refused to take any reasonable action to protect his safety. Defendant Smith further prosecuted Plaintiff Johnson for disciplinary violations where he was the victim of brutal assaults.

10. Defendant Regina Stepney, is currently a program director at MCF-Stillwater, and at relevant times hereto, was in charge of case managers at that prison. She was repeatedly advised by Plaintiff Johnson of threats to his safety but refused to take any reasonable action to protect his safety.

11. Defendant Lt. Doug Johnson, is and at relevant times hereto, was a lieutenant at MCF-Stillwater. At relevant times hereto, he was in charge of the segregation unit and failed to take reasonable actions with respect to policies and procedures and specifically with regard to Plaintiff Johnson, to protect his safety.

12. Defendant Sgt. Todd Hartman, is and at relevant times hereto, was a correctional officer at MCF-Stillwater. He was repeatedly advised by Plaintiff Johnson of threats to his safety but refused to take any reasonable action to protect his safety.

13. Defendant Dawn Willard, is and at relevant times hereto, was a correctional officer at MCF-Stillwater. She was on duty during the incident in which Plaintiff Johnson lost the vision in his right eye and it was her deliberate acts and omissions which resulted in his injuries.

14. Defendant Jeffrey L. Johnson, is and at relevant times hereto, was a correctional officer at MCF-Stillwater. He was on duty during the incident in which Plaintiff Johnson lost the vision in his right eye and it was his deliberate acts and omissions which resulted in his injuries.

15. Defendant David Christensen, is and at relevant times hereto, was a correctional officer at MCF-Stillwater. He was on duty during the incident in which Plaintiff Johnson lost the vision in his right eye and, upon information and belief, it was his deliberate acts and omissions which resulted in his injuries.

16. Defendant Scott Gary, is and at relevant times hereto, was a

4

correctional officer at MCF-Stillwater. He was on duty during the incident in which Plaintiff Johnson lost the vision in his right eye and, upon information and belief, it was his deliberate acts and omissions which resulted in his injuries.

17.     Defendant Shane Jones, is and at relevant times hereto, was a correctional officer at MCF-Stillwater. He was on duty during the incident in which Plaintiff Johnson lost the vision in his right eye and, upon information and belief, it was his deliberate acts and omissions which resulted in his injuries.

18.     John Doe, whose true name is unknown, is an employee of DOC. He has been involved in the denial of Plaintiff Johnson's rights.

19.     Jane Roe, whose true name is unknown, is an employee of DOC. She was involved in the denial of Plaintiff Johnson's rights.

20.     All individual defendants named above are being sued in both their personal and official capacities. At all times relevant hereto, all individual defendants were acting under color of state law.

### III. FACTUAL BACKGROUND

21.     Mr. Johnson has been incarcerated by DOC since 2003, and has been in its prison in Stillwater for most of that time.

22.     On or about December 4, 2003, another inmate, Anthony Rockensock, physically attacked Mr. Johnson with a homemade knife in Stillwater prison in close proximity to a security bubble. In this unprovoked attack, Rockensock snuck up

5

on Mr. Johnson from behind and threw numerous punches to Mr. Johnson's head. Mr. Johnson suffered numerous cuts and bled profusely. Prison staff eventually broke up the fight and disciplined both Johnson and Rockensock. Mr. Johnson was placed in segregation even though he was the victim. Prison officials were aware at that time and at subsequent times that Rockensock attacked Mr. Johnson upon orders from a gang in which Rockensock was a member.

23. Mr. Johnson was released from segregation on or about January 23, 2004. The next day members of Rockensock's gang threatened Mr. Johnson with further violence, and there was another fight. Prison staff heard Mr. Johnson being threatened but, upon information and belief, failed to take any measures to protect Mr. Johnson from further attack. Mr. Johnson was again placed in segregation.

24. Beginning in February, 2004, and continuing for months afterwards, Mr. Johnson wrote kites or letters, and complained verbally to Lt. Michelle Smith and Regina Stepney, the head of case managers at MCF - Stillwater. Mr. Johnson informed Lt. Smith and Ms. Stepney that he believed his life was in danger due to threats from Rockensock and his gang. Mr. Johnson requested a transfer to maximum security prison, MCF - Oak Park Heights, where there could be more security. Prison officials did not respond to Mr. Johnson's request for necessary protection.

25. When Mr. Johnson's next term in disciplinary segregation expired in March, 2004, he refused to leave segregation. Mr. Johnson explained to Lt. Smith that his

life was threatened. Prison officials nevertheless insisted that Mr. Johnson not only return to general population where he would be exposed to the same gang, but also would involved being double-bunked. Mr. Johnson continued to complain to Lt. Smith and Ms. Stepney that his life was in danger, and refuse to leave segregation. Mr. Johnson was further disciplined for refusing to leave segregation. Lt. Smith was responsible for imposing discipline. She further arranged for Mr. Johnnson to be placed on the most restrictive form of segregation in order to coerce him into returning to general population. Mr. Johnson further informed Defendant Hartman of the reason he was staying in segregation but, upon information and belief, Hartman took no action.

26. On or about June 4, 2004, Mr. Johnson encountered Rockensock in the cell hall while being escorted from segregation to Health Services. Mr. Johnson was afraid that Rockensock was about to attack him again. A fight ensued. Officers broke up the fight without anyone suffering serious injury. Mr. Johnson was given further disciplinary segregation.

27. Upon information and belief, other supervisory and managerial defendants were aware of threats to Plaintiff Johnson's safety but failed to take reasonable action to protect him.

28. Plaintiff Johnson and Rockensock were placed in different halves of the same segregation unit, on the same tier. The two sections of the segregation unit were separated by gates. It is standard and required procedure for the gates to be locked while

7

inmates in the segregation unit are released from their cells for exercise and showers.

29. When Rockensock was released from his cell for exercise on July 18, 2004, prison guards left the center security gate open in violation of required procedures. Upon information and belief, correction officer Dawn Willard was responsible for securing the gate and was therefore responsible for leaving the gate open. Upon information and belief, Willard observed inmates running back and forth between the front and back half of the unit without securing the gates. Willard did not conduct the required security check to make sure inmates required to be in their cells were in their cells.

30. After Rockensock was released for exercise on July 18, 2004, he went past the open gate, ran to Mr. Johnson's cell, slid open the door, entered Mr. Johnson's cell, slid the cell door closed behind him, and then attacked Mr. Johnson with a homemade knife. Rockensock stabbed Mr. Johnson in his right eye on his first swing. Rockensock continued to stab Mr. Johnson. The guard on duty at the end of the tier had pulled the lever to lock the cell doors. Mr. Johnson was therefore trapped in his cell for approximately ten minutes as Rockensock repeatedly stabbed Mr. Johnson. Mr. Johnson suffered wounds to his face, neck, shoulder and arm, as well as the wound directly to his right eye.

31. As a result of the attack on July 18, 2004, Mr. Johnson's right eye was irreparably severed, and needed to be removed. Mr. Johnson has therefore suffered

8

permanent loss of his right eye and complete loss of any vision in his right eye.

33. Subsequently, DOC disciplined Willard for violating security procedures, including failing to secure the center gates, and failing to post security staff at the end of the galleries. Correctional officer Jefferey L. Johnson was also disciplined for failing to follow security procedures, including making sure guards were posted at the end of the gallery during the incident. Upon information and belief, other correctional officers on duty, including but not limited to Defendants Christensen, Gary, and Jones, also failed to fulfill their responsibilities to make sure guards were posted at the end of the galleries in the segregation unit. The failure to have guards properly posted resulted in the failure to prevent Rockensock from attacking Plaintiff Johnson.

33. Upon information and belief, other inmates in the Minnesota prison system have been attacked and injured due to failures to take proper security precautions in segregation units to protect inmates who are vulnerable attacks, but Defendant corrections officials have failed to take necessary measures to prevent these incidents from continuing.

34. Plaintiff has exhausted all administrative remedies with respect to the incidents described above by pursing all available informal and formal grievance procedures.

35. As a result of Defendants' above-described actions, Plaintiff has suffered great harm and damage, including but not limited to severe pain and suffering,

9

permanent disability, severe mental distress, embarrassment and humiliation, future medical expenses, lost earnings, and other damages in an amount to be determined.

### IV. CAUSE OF ACTION - VIOLATIONS OF 42 U.S.C. § 1983

36. Plaintiff hereby realleges and incorporates by reference all of the facts and allegations contained in paragraphs 1 through 34 of this Complaint.

37. Defendants, acting under color of state law, have deprived Plaintiff of his rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Eighth and Fourteenth Amendments to the United States Constitution, including but not limited to committing deliberate indifference to Plaintiff Johnson's safety by refusing to take reasonable measures to protect him from known dangers, and depriving Plaintiff of liberty without due process of law and equal protection of the law.

38. As a result of Defendants' violations of Plaintiff's, he has suffered the damages described in Paragraph 33 of this Complaint.

### V. RELIEF REQUESTED

### V. RELIEF REQUESTED

WHEREFORE Plaintiff prays for Judgment in his favor as follows:

1. Awarding judgment in favor of Plaintiff against the Defendants and each of them jointly and severally in an amount to be determined as and for compensatory damages.

2. Awarding judgment in favor of Plaintiff against the Defendants and each of them jointly and severally in an amount to be determined as and for punitive damages.

3. Awarding Plaintiff all of his costs and disbursements herein, and prejudgment interest.

4. Awarding Plaintiff reasonable attorney fees pursuant to 42 U.S.C. § 1988.

5. Such other and further relief as the Court may deem just and proper.

Dated: January 24, 2008

LAW OFFICE OF JORDAN S. KUSHNER

By s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
Attorney for Plaintiff
431 South 7th Street
Minneapolis, Minnesota 55415
(612) 288-0545